UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-21

**KATHY FUTRELL**                                                                                      **PLAINTIFF**

**v.**

**DOUGLAS AUTOTECH CORP.**                                      **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the Court upon Defendant's Motion for Summary Judgment (Docket #43). Plaintiff has responded (Docket #46). Defendant has replied (Docket #47). This matter is now ripe for adjudication. For the following reasons, Defendant's Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART.

## BACKGROUND

Plaintiff Kathy Futrell began working for Defendant Douglas Autotech Corp. ("Autotech") on June 2, 1997. Futrell worked as an hourly associate until she was terminated on December 6, 2007. On October 31, 2007, Futrell suffered a work-related injury to her left shoulder. The following day, Futrell went on a pre-planned vacation. While on vacation, Futrell visited her personal doctor, Dr. Harris, who placed her under work restrictions as a result of her shoulder injury. Futrell returned to work on November 12, 2007, and reported her doctor's work restrictions to Human Resources Director Tara Brown. Brown sent Futrell to Autotech's workers' compensation doctor, Dr. DeRegis. Dr. DeRegis placed Futrell on work restrictions, prescribed medicine and physical therapy, and made an initial determination that the shoulder injury was work-related. Initially, Autotech moved Futrell to a different work station to accommodate her restrictions. When Autotech needed Futrell to return to her former workstation, they modified it to fit within her restrictions.

On December 6, 2007, Futrell was called into the office to meet with Brown and Manufacturing Manager, Nick Harbold. The parties' accounts of this meeting differ substantially. Autotech asserts that Futrell refused to participate in the meeting without an attorney or tape recorder. Brown then informed Futrell that she did not need to say anything because the purpose of the meeting was to discuss her restrictions and moving her to the modified workstation. Autotech states that Futrell kept repeating that she wanted someone there on her behalf. Futrell was warned by Brown that if she left the meeting, it would be considered job abandonment. Futrell began to leave the office. At that point in time, Harbold warned Futrell again. When Futrell still refused to participate in the meeting, Harbold escorted Futrell out of the building, and she was terminated for job abandonment effective December 6, 2007.

Futrell, on the other hand, states that she was harassed repeatedly by Harbold and her team leader, Cindy Parker, in the weeks prior to the December 6th meeting. She reported this harassment to Brown, and requested a meeting on December 4, 2007. When she was called into the office on December 6, 2007, Futrell acknowledges that she asked for an attorney or tape recorder at the meeting. Futrell states that she was never told to just sit and listen. Instead, Harbold got mad and said "You're out of here." Following this statement, Harbold took her elbow and escorted her out of the office. Harbold instructed Futrell to get her things and escorted her out of the plant.

Futrell filed suit in state court on December 4, 2008. Futrell's complaint sought damages for workers' compensation retaliation, intentional infliction of emotional distress, and breach of covenant of good faith and fair dealing. Autotech removed the case to this Court on February 6, 2009. The Court dismissed Futrell's breach of covenant of good faith and fair dealing claim on

April 1, 2009. Autotech filed the present motion for summary judgment on the remaining claims on February 1, 2010.

**STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed.

R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

### I. Workers' Compensation Retaliation

Kentucky Revised Statutes Section 342.197(1) provides that "[n]o employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this chapter." Ky. Rev. Stat. Ann. § 342.197(1). "This provision has been construed to forbid retaliation for filing *or* pursuing a workers' compensation claim." *Southerland v. Hardaway Mgmt. Co.*, 41 F.3d 250, 256 (6th Cir. 1994) (citing *Overnite Transp. Co. v. Gaddis*, 793 S.W.2d 129, 132 (Ky. Ct. App. 1990)). "An employer may be held liable under KRS § 342.197(1) for retaliatory discharge if the jury believes that the employee's pursuit of a workers' compensation claim was one of the substantial factors motivating the discharge decision, notwithstanding proof that the employee would have lawfully been discharged anyway." *Bullard v. Alcan Aluminum Corp.*, 113 F. App'x 684, 690 (6th Cir. 2004) (citing *First Property Mgmt. Corp. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993)).

Under Kentucky law, "a plaintiff can meet [the] initial burden of proof by establishing: '(1) he engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment action was taken; and (4) that there was a causal connection between the protected activity and the adverse employment action.'" *Colorama, Inc. v. Johnson*, 295 S.W.3d 148, 152 (Ky. Ct. App. 2009) (quoting *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky. Ct. App. 2006)). The main issue is whether a plaintiff's protected activity "was a

4

substantial and motivating factor but for which he would not have been discharged." *Id.* (citing *First Prop. Mgmt. Corp. v. Zarebidaki*, 867 S.W.2d 185 (Ky. 1993); *Bishop v. Manpower, Inc. of Cent. Ky.*, 211 S.W.3d 71 (Ky. Ct. App. 2006) ("[I]f the employer articulates a legitimate, non-retaliatory reason for the decision, the employee must show that the discriminatory motive was a substantial and motivating factor behind the adverse employment action."))._[1]_ In other words, Plaintiff must demonstrate that her pursuit of a workers' compensation claim was a substantial and motivating factor in her termination. "'In most cases, this requires proof that (1) the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action.'" *Id.* (quoting *Brooks v. Lexington-Fayette Urban County Hous. Auth.*, 132 S.W.3d 790, 804 (Ky. 2004)).

The evidence is undisputed that Plaintiff was pursuing a workers' compensation claim, and Defendant was aware of her actions. Pursuit of a workers' compensation claim is a statutorily protected activity. *See* Ky. Rev. Stat. Ann. § 342.197(1); *Southerland*, 41 F.3d at 256. Further, it is undisputed that Plaintiff was terminated on December 6, 2007. Therefore, the only issue before the Court on summary judgment is whether Plaintiff's pursuit of a workers' compensation claim was a substantial and motivating factor in Defendant's decision to terminate her. Defendant argues that it had a legitimate, non-retaliatory reason for firing Plaintiff: she

---

[1] In response to Defendant's motion for summary judgment, Plaintiff references the burden-shifting scheme established for civil rights claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Kentucky courts have never explicitly applied the *McDonnell Douglas* test in the context of a workers' compensation retaliatory discharge claim." *Bishop*, 211 S.W.3d at 75. Therefore, although the test is substantially similar, the Court will not apply the *McDonnell Douglas* analysis.

refused to participate in the meeting and thus was terminated for job abandonment. Plaintiff asserts that she never abandoned her job, and Defendant fired her because of her workers' compensation claim.

Plaintiff has presented enough evidence to create a genuine issue of material fact that her workers' compensation claim was a substantial and motivating factor in her termination. First, a close temporal relationship exists between the time Plaintiff began working with restrictions and the date on which she was terminated. Further, Plaintiff's account of the meeting on December 6, 2007, differs substantially from Defendant's account, creating a genuine issue of material fact as to whether Defendant told Plaintiff she would be abandoning her job if she left the meeting. This factual dispute is key as to whether Defendant's reason for termination was legitimate. Plaintiff also testified that Harbold hit her twice on her back because he thought she was faking her injury. She reported Harbold's harassment to Human Resources. Finally, according to Plaintiff, she was repeatedly called into the office and asked about her restrictions, despite having a note from her doctor detailing those restrictions. These additional facts present enough evidence to survive a motion for summary judgment.

## II. Intentional Infliction of Emotional Distress

A prima facie case of intentional infliction of emotional distress, or outrage,[2] requires that

---

[2]Defendant argues that Plaintiff's claim for outrage is preempted by her workers' compensation claim under Ky. Rev. Stat. § 342.197. Defendant directs the Court to case law citing Ky. Rev. Stat. Chapter 344, in which Chapter 344 clearly preempts outrage claims. *See Kroger Co. v. Buckley*, 113 S.W.3d 644 (Ky. Ct. App. 2003). However, in the context of retaliation under Chapter 342, the case law is not so clear. The Kentucky Supreme Court declined to address the very issue raised by Defendant in *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 64 (Ky. 1996). Case law also indicates that courts have addressed claims for outrage and workers' compensation retaliation concurrently. *See, e.g.*, *Morris v. Alcan Foil Prod., Div. Alcan Aluminum Corp.*, 99 F.3d 1139 (table), 1996 WL 614353 (6th Cir. 1996); *Jenkins v. City*

Plaintiff show: (1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) that the emotional distress was severe. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004) (citing *Humana of Ky., Inc. v. Seitz,* 796 S.W.2d 1, 2-3 (Ky. 1990)). The Court must determine "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* at 788-89 (citing Restatement (Second) of Torts § 46(1) cmt. h (1965)).

Kentucky courts have "set a high threshold for outrage claims," *Stringer*, 151 S.W.3d at 791, and in Kentucky, "a claim for the tort of outrage requires the plaintiff to prove conduct which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Seitz*, 796 S.W.2d at 3 (quoting Restatement (Second) of Torts § 46(1) cmt. d (1965)). The Kentucky Supreme Court reasoned in *Kroger Co. v. Willgruber* that "citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." 920 S.W.2d 61, 65 (Ky. 1996).

For example, Kentucky courts have found nothing to support a claim of outrage where the defendant:

---

*of Russellville*, 2007 WL 3025062 (W.D. Ky. 2007); *Kegley v. Morehead State Univ.*, 2006 WL 3456632 (Ky. Ct. App. 2006). Absent conclusive Kentucky law on this issue, the Court declines to bar Plaintiff's outrage claim at this time.

> (1) refused to pay medical expenses arising out of an injured worker's compensation claim; (2) wrongfully converted the plaintiff's property in a manner that breached the peace; (3) negligently allowed his vehicle to leave the road and struck and killed a child; (4) committed "reprehensible" fraud during divorce proceedings by converting funds belonging to his spouse for the benefit of defendant and his adulterous partner; (5) wrongfully terminated the plaintiff; (6) displayed a lack of compassion, patience, and taste by ordering plaintiff, who was hysterical over the fact that she had just delivered a stillborn child in her hospital room, to "shut up" and then informing her that the stillborn child would be "disposed of in the hospital"; (7) erected a billboard referencing defendant's status as a convicted child molester; (8) wrongfully garnished plaintiff's wages pursuant to a forged agreement; and (9) impregnated plaintiff's wife.

*Stringer*, 151 S.W.3d at 790-91 (internal citations omitted).

Plaintiff alleges that she suffered harassment by management "in the form of constantly being called to the office to discuss her restrictions, watching her at her workstation as to intimidate her, leading her to believe that her work restrictions had been modified by Dr. DeRegis through telephone conversations with Human Resources Director Tara Brown, and the extreme harassment of Production Manager, Nick Harbold hitting her in the back causing the Plaintiff pain." Plaintiff's Response Memorandum to Motion for Summary Judgment, p. 11.

"It is for the court to decide whether the conduct complained of can reasonably be regarded to be so extreme and outrageous as to permit recovery." *Goebel v. Arnett*, 259 S.W.3d 489, 493 (Ky. Ct. App. 2007) (citing *Whittington v. Whittington*, 766 S.W.2d 73 (Ky. Ct. App. 1989)). The Court looks to "'the conduct of the offender rather than the subject of the conduct . . . .'" *Stringer*, 151 S.W.3d at 788 (quoting *Burgess v. Taylor*, 44 S.W.3d 806, 809 (Ky. Ct. App. 2001)). The Court finds that the conduct in this case could not reasonably be regarded as rising to the level of extreme and outrageous. Calling Plaintiff into the office repeatedly and watching her at her workstation are acts which certainly do not "go beyond all possible bounds of decency." *Stringer*, 151 S.W.3d at 789 (quoting Restatement (Second) of Torts § 46(1) cmt. d

8

(1965)). Nor is Brown's alleged lie to Plaintiff about Dr. DeRegis an act that would bring a person "to his knees." *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 67 (Ky. 1996). Although Harbold's alleged display of hitting Plaintiff on the back is indeed reprehensible, the Court does not believe it is enough to meet the high standard set by Kentucky courts for a claim of outrage.

Because Plaintiff has failed to make out a prima facie case of intentional infliction of emotional distress, summary judgment is proper.

## III.     Punitive Damages

Defendant argues that Plaintiff's request for punitive damages is not an allowable measure of recovery under Kentucky Revised Statutes Section 342.197. Plaintiff acknowledges that Defendant is correct in that the statute does not provide for punitive damages. The statute "provides that only 'actual damages' may be recovered. 'Actual damages' . . . does not include punitive damages." *Dollar Gen. Partners*, 214 S.W.3d at 921 (citing *Ky. Dep't of Corr. v. McCullough*, 123 S.W. 130, 139 (Ky. 2003)). Accordingly, the Court finds that Plaintiff may not seek punitive damages.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART.

An appropriate order shall issue.